# OLSOFF | CAHILL | COSSU LLP

3 WATER STREET
Ellenville, NY 12428

2021-April-12

BY ECF

Hon. Katharine H. Parker
United States District Court Magistrate Judge
500 Pearl Street, Courtroom 17D
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/13/2021

Re:   *Baby-Cakes Studio, LLC v. Linetta Robinson, et ano.*; No. 20-CV-8779 (the "Action")

Dear Judge Parker:

We are counsel for Plaintiff Baby-Cakes Studio, LLC ("Plaintiff"). Because of our concern that two valuable artworks that are the subject dispute were not produced as agreed by Defendant Linetta Robinson ("Robinson"), we request an urgent conference to address that matter and certain discovery issues that have arisen in this Action. In accordance with Your Honor's Individual Practices in Civil Cases, we sought a telephonic conference with counsel for the opposing party, Defendant's counsel saw "no reason to speak." (*See* **Exhibit J**.)

**Factual Background & Discovery**

As You Honor may recall, when the parties first discussed this case with Your Honor at the 2021-January-27 Conference, it concerned a single painting by Nathaniel Mary Quinn (the "Painting") that Plaintiff alleges went missing in the early 2000s, but which Robinson claimed was purchased in good faith in or about 2006 from an art gallery. Plaintiff learned about the current location of the Painting after Plaintiff's representative was contacted by Bonhams auction house ("Bonhams") which was seeking information about the Painting after it was consigned to Bonhams for sale by Plaintiff.

During discovery, Bonhams produced documents evidencing, for the first time, that two additional paintings by Nathaniel Mary Quinn (the "Other Works"; together with the Painting, the "Three Quinn Paintings") were also in Robinson's possession and which she claimed to own. Plaintiff immediately raised concerns about the information produced by Bonhams and Robinson's failure to previously disclose the Other Works to Plaintiff.

During Robinson's deposition, it was disclosed that Robinson, without the assistance of counsel, had determined what to produce in discovery at her own discretion, including selected emails and text messages, resulting in an incomplete production. (*See* **Exhibit A**, Robinson Tr. 49:5-18.) Further, Robinson's explanation for how she acquired the Three Quinn Paintings is inherently incredible. Robinson testified that:

- While she is a Certified Public Accountant, Robinson has no recollection or records for how much she purchased any of the Three Quinn Paintings for (individually or collectively) (*Id.*, at 26:8-27:9; 31:5-25);

- She claimed to have made some payments for the Three Quinn Paintings in cash over time (amounts and dates unknown to her) and also wrote a check for $30,000, also at some unknown point in time, which apparently also included payment for additional artworks by

> Bryant Lamont Johnson, however, no record of the check (or the alleged cash payments) exists (*id.*, at 24:6-26:7);

- Robinson also testified that she was married in 2006 (she claims not to know the date of the weeding), but never told her husband at the time that she purchased the Three Quinn Paintings for some unknown amount (*id.*, at 39:3-6; 120:23-121:22);

- She was divorced in 2010 (the date also unknown to her), but never disclosed the Three Quinn Paintings as assets as part of her divorce settlement because she "did not see them as being assets" (*id.*, at 41:15-42:7);

- She did not take possession of the Three Quinn Paintings until sometime after 2010 (date, once again, unknown to her) (*id.*, at 42:18-25), but claims that, from the time she took possession of them, no one was ever in her residence other than Defendant Bryant Johnson ("Johnson") (discussed below), so there are no witnesses who could testify to seeing them on her walls (*id.*, at 177:22-178:7); and

- There isn't a single photograph in which any of the Three Quinn Paintings are visible in whole or in part, or otherwise documented them while they were purportedly in her house. (*Id.*, at 45:9-14.)

Perhaps most importantly, Robinson admitted for the first time that Defendant Johnson is the father of her child (*id.*, at 52:22-23) and was also the owner of the art gallery that Robinson claimed to have purchased the Three Quinn Paintings from. (*Id.*, at 77:24-78:3.) Johnson did exhibit artwork by Mr. Quinn at one point in 2006, but, as both Mr. Quinn testified to (*see* **Exhibit B**, Quinn Tr. 64:5-25; 77:21-78:11) and contemporaneous news reports confirm (*see* **Exhibit C**), the artworks Johnson exhibited were "mixed media and charcoal drawings," *not* large oil on canvas paintings (one of the Three Quinn Paintings is eight feet in length). Further, the Three Quinn Paintings were viewed by Bonhams at Johnson's studio, and (as set forth above) there is no record that the Three Quinn Paintings were ever in Robinson's possession or that they ever traveled from Robinson's home to Johnson's studio.

Taken as whole, the evidence adduced so far (without the benefit of receiving all of Robinson's relevant documents and communications) demonstrates that Robinson's story is simply not credible. As we previously advised the Court, it is contradicted by news reports contemporaneous with her purported acquisition. That Robinson would not have told a single person over the last 15 years about the most expensive purchase in her life outside of her house and car also defies belief.

**Discovery Disputes**

Promptly upon the suspension of Robinson's deposition, Plaintiff demanded both (i) a proper document production by Robinson with the involvement of a forensic company, and (ii) the release of the Other Works to a third-party for safekeeping during the pendency of this Action. Plaintiff also promptly filed an Amended Complaint (ECF No. 15) to assert claims to ownership over the Other Works and added Johnson as a Defendant (for aiding and abetting Robinson's conversion of the Three Quinn Works).

Robinson's counsel agreed to comply with both demands. (*See* **Exhibit D**.) However, despite promising to produce additional documents and release the Other Works to a qualified art handler

Page 3 of 4
The Honorable Katharine H. Parker
2021-April-12

last week, neither obligation was satisfied. the Other Works were scheduled to be picked up from Johnson's studio on Thursday, April 8th, after nearly a month of trying to make arrangements. However—just hours before the pick-up was scheduled to take place—Robinson's counsel cancelled the pick-up directly with the shippers retained by Plaintiff, *but did not notify Plaintiff's counsel that he had done so*. (*See* **Exhibit E**.) Upon learning of this last-minute cancellation, Plaintiff's counsel contacted the e-discovery vendor, V Discovery, that Robinson's counsel had claimed to have retained, for assurances that it had been retained and for an explanation for the delays in the promised production, but in response, Robinson's counsel directed V Discovery not to provide any response to Plaintiff's counsel. (*See* **Exhibit F**.)

In light of the foregoing, Plaintiff is very concerned. Given the allegations against them (*i.e.*, that they worked together to convert Plaintiff's artworks and sell them without Plaintiff's knowledge), Plaintiff's demands concerning the search for responsive documents and the safekeeping of the Other Works are not unreasonable (as evidenced by Robinson's counsel's agreement to those terms) and are what is required by law. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents"). However, it seems that the Defendants are stalling in fulfilling their obligations, which is prejudicing Plaintiff as third-party depositions are now taking place without the benefit of a complete production from Robinson. Accordingly, Plaintiff respectfully requests that Robinson be ordered to promptly (a) produce all responsive documents in accordance with the agreed-upon search procedures set forth in **Exhibit D**, and (2) release the Other Works into the control of the third-party that the parties have agreed upon for safekeeping, and order Robinson to pay for the cost of the shippers in light of the last-minute cancellation of the prior, attempted pick-up.

### Service of the Amended Complaint on Johnson

A separate matter has also arisen with regard to Defendant Johnson. Initially not a party to this Action, Johnson nonetheless went out of his way to avoid service of a subpoena from a process server, despite agreeing to meet the server and accept the subpoena in February. (*See* **Exhibit G**.) Johnson has also responded to emails sent to the same email address that he used to communicate with Bonhams—albeit falsely representing himself to be Robinson. (*See* **Exhibit H**.) Plaintiff served the Summons and Amended Complaint on Johnson at his studio address, pursuant to N.Y.C.P.L.R. § 308(4), where Robinson has testified that Johnson lives and works (*see* Robinson Tr. 59:19-22; 200:5-18). (*See* ECF No. 18.) Today, Plaintiff's counsel also sent a copy of the Summons and Amended Complaint to Johnson at the email address that he uses. (*See* **Exhibit I**.) While Plaintiff believes that it has satisfied its service obligations, in the interest of avoiding a future dispute over service, pursuant to Fed. R. Civ. P. 4(e) and N.Y.C.P.L.R. § 308(5), Plaintiff respectfully requests that the Court permit substituted service on Defendant Johnson via email, and issue an Order holding that Johnson was deemed served as of Monday, April 12, 2021. *See Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 367 (S.D.N.Y. 2016) ("Service by email alone comports with due process where a plaintiff can demonstrate that the email is likely to reach the defendant") (citations omitted).

We look forward to addressing these issues at a conference with Your Honor.

Page 4 of 4
The Honorable Katharine H. Parker
2021-April-12


Respectfully submitted,

*[signature]*

Paul Cossu

cc:   All counsel of record (via ECF)
      Mr. Bryant Lamont Johnson (via email: artpimp1966@gmail.com)

---

In light of the fact that Defendant represents that many of the issues highlighted in Plaintiff's letter are premature, and because there is a settlement conference in this case scheduled for April 21, 2021, the Court finds that an emergency conference would be inappropriate at this time. That said, a case management conference is hereby scheduled to take place on May 24, 2021 at 11:30 a.m. where the Court will address all outstanding discovery disputes in this case. Counsel for the parties shall submit a joint letter, not to exceed three pages in length, two business days in advance of the conference to update the Court on the status of the discovery issues left to be addressed at the conference. Further, counsel for the parties are directed to call the Court's conference line at the scheduled time. Please dial (866) 434-5269, access code: 4858267.

**SO ORDERED:**

*[signature]*

HON. KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE

Date: April 13, 2021